## Case No. 8,062.

### LANGDON v. JOY.

[4 Dill. 391.][1]

Circuit Court, D. Kansas. 1877.

INDIANS—CHEROKEE NEUTRAL LANDS—RIGHTS OF ACTUAL SETTLERS UNDER THE TREATY OF JULY 19, 1866.

Rights of "actual settlers" upon the Cherokee neutral lands purchased by the defendant Joy,—see Holden v. Joy, 17 Wall. [84 U. S.] 211,—under the 17th article of the treaty of July 19, 1866, as amended, considered; and it was *held* that an actual settler, whose rights were perfect at the date of the ratification of the treaty, could sell his improvements and rights to another, and that the bill made a case showing in the plaintiff an equitable title to the land in question.

[Cited in Stroud v. Missouri R. Ft. S. & G. R. Co., Case No. 13,547.]

James F. Joy commenced in this court an action of ejectment against the present complainant for one hundred and sixty acres embraced in the purchase by Joy of the Cherokee neutral lands. This is a suit in equity against Joy, asserting that the complainant is the equitable owner of the one hundred and sixty acres of land in question, and asking to enjoin the prosecution of the ejectment action until the present suit is determined, and praying that Joy may be decreed to hold the land in trust for the complainant. This is a case brought to test the rights of actual settlers on the Cherokee neutral lands, who are similarly situated to the complainant. The question in this case depends upon a construction of the 17th article of the treaty between the United States and the Cherokee Nation of Indians, concluded July 19th, 1866, and amended July 31st, 1866. That article is in these words: "The Cherokee Nation hereby cedes, in trust to the United States, the tract of land in the state of Kansas which was sold to the Cherokees by the United States, under the provisions of the 2d article of the treaty of 1835; and also that strip of the land ceded to the Nation by the 4th article of said treaty which is included in the state of Kansas; and the Cherokees consent that said lands may be included in the limits and jurisdiction of the said state. The lands herein ceded shall be surveyed as the public lands of the United States are surveyed, under the direction of the commissioner of the general land office, and shall be appraised by two disinterested persons, one to be designated by the Cherokee national council, and one by the secretary of the interior, and, in case of disagreement, by a third person, to be mutually selected by the aforesaid appraisers. The appraisement to be not less than an average of one dollar and a

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

quarter per acre, exclusive of improvements. And the secretary of the interior shall from time to time, as such surveys and appraisements are approved by him, after due advertisement for sealed bids, sell such lands to the highest bidders for cash, in parcels not exceeding one hundred and sixty acres, and at not less than the appraised value: provided, that whenever there are improvements of the value of fifty dollars made on the lands not being mineral, and owned and personally occupied by any person for agricultural purposes at the date of the signing hereof, such person owning and in person residing on such improvements, shall, after due proof, made under such regulations as the secretary of the interior may prescribe, be entitled to buy, at the appraised value, the smallest quantity of land in the legal sub-divisions which will include his improvements, not exceeding in the aggregate one hundred and sixty acres; the expense of survey and appraisement to be paid by the secretary out of the proceeds of the sale of said land: provided, that nothing in this article shall prevent the secretary of the interior from selling the whole of said neutral lands in a body to any responsible party, for cash, for a sum not less than eight hundred thousand dollars." This article was amended by striking out the last proviso in article 17, and inserting in lieu thereof the following: "Provided, that nothing in this article shall prevent the secretary of the interior from selling the whole of said lands not occupied by actual settlers at the date of the ratification of this treaty, not exceeding one hundred and·sixty acres to each person entitled to pre-emption under the pre-emption laws of the United States, in a body, to any responsible party, for cash, for a sum not less than one dollar per acre." In a supplemental article to this treaty, concluded April 27, 1868, it was provided that Joy should take only the residue of said lands after securing to "actual settlers" the lands to which they were entitled under the provisions of the 17th article, and amendments thereto, of the said Cherokee treaty of August 11th, 1866, and that the proceeds of the sale of said lands so occupied at the date of said treaty by "actual settlers," shall enure to the sole benefit of, and be retained by the secretary of the interior as trustee for, the said Cherokee Nation of Indians. At the time when the treaty of July 19th,·1866, was ratified and proclaimed, one Vaughan was an actual settler upon the one hundred and sixty acres here in controversy, and had made improvements thereon of the value of fifty dollars. It is not necessary to state the rights of Vaughan more fully, because it is conceded that the bill shows that if Vaughan had remained the owner of the improvements, he would have been entitled to the benefit of the provisions of the· treaty in respect to actual settlers. But on the 28th day of August, 1866, Vaughan sold his interest in the land and improvements to the present plaintiff, who took possession January 12, 1867, and has ever since remained in posses-

sion, and has made .valuable improvements thereon. The bill shows that the plaintiff possesses the qualifications of a pre-emptor of the public lands, and that in 1867 the secretary of the interior appointed a commissioner, and the Cherokee Nation appointed another, under the 17th article of the treaty, to receive proof of settlement, ownership of improvements, and occupancy of lands under said article, with power to give persons making such proof a certificate of the right to purchase; that said commissioners appraised the land in controversy at two dollars per acre; that the plaintiff went before the commissioners, and, both in behalf of Vaughan and of himself, offered the proof prescribed by the rules and regulations of the secretary of the interior, and to pay all fees required by law and necessary to obtain a certificate, but that the commissioners refused to receive the same, on the ground that no other person except the said Vaughan had the right to make the said proof or receive the said certificate, and on the ground that Vaughan could not sell his improvements or the plaintiff purchase the same. The bill shows that the land in question is included in the patent of the defendant Joy, and it brings into court the two dollars per acre for him, and prays that he may be decreed to hold the title in trust for the plaintiff and general relief. The defendant demurred to the bill, and on this demurrer the cause was submitted to the court.

McComas & McKeeghan, for plaintiff.
Blair & Pratt, for defendant.

Before MILLER, Circuit Justice, and DILLON, Circuit Judge.

DILLON, Circuit Judge (orally). It is conceded in the argument that if Vaughan had remained on the land he would have been entitled to the benefit of the provisions of the treaty in favor of actual settlers. His rights were complete and in full force at the time the treaty of 1866 was ratified and proclaimed. But after this date he sold his improvements and rights in the land to the present plaintiff.

Substantially two objections are made by the defendant to the plaintiff's right to the land. The one is that Vaughan had no power to sell the improvements to the plaintiff, and that the plaintiff did not, therefore, succeed to his rights in respect thereto. The other is that the decision of the commissioners rejecting the proof offered by the plaintiff is conclusive upon him. The most important question is the first one, for if Vaughan had the power to transfer his rights to the plaintiff, the decision of the commissioners, based upon a mistake of the plaintiff's legal rights, would not conclude the party affected by it, even if the secretary of the interior could clothe the commissioners with the power to decide upon the rights of settlers under the 17th article of the treaty. Johnson v. Tously, 13 Wall. [80 U. S.] 72. This case has been repeatedly approved.

If the language of the treaty be observed, it will be seen that it does not require that the improvements should have been made by the person residing on the land at the date of the signing or ratification of the treaty. But what is required is that they shall be owned by the actual occupant, and that such owner shall in person reside on such improvements at the date of the ratification of the treaty. At this date Vaughan was in possession and the owner of his improvements. His rights were then fixed. There is nothing in the treaty that makes it necessary that Vaughan should remain in possession and personally make the proof. If he had died, his heirs or devisees might, doubtless, have made the necessary proof, and become entitled to buy. So, also, the actual settler, whose rights were perfect at the ratification of the treaty, may sell and convey his rights to another. It is argued that the reference in the amendment to the treaty to persons entitled to pre-emption laws, incorporates all the restrictions of those laws into the treaty, including the provision which disables the pre-emptioner from selling and conveying, or contracting to sell and convey, before he receives a patent.

But such was not the purpose of this provision of the treaty. If Vaughan had not possessed the qualifications of a pre-emptor, this might possibly have defeated his rights under the treaty; but if he did possess these qualifications at the date of the ratification of the treaty his rights were perfect, he could have bought as soon as the appraisement was made, and there is no public policy, as in the public pre-emption laws, against the alienation of his rights to others.

Under the allegations of the bill, our opinion is that the plaintiff was entitled to make the proof before the commissioners; that their action in rejecting his proof and denying his claim on the ground alleged was illegal, and that if the bill be true, the plaintiff is equitably entitled to the land, and that the defendant holds the legal title in trust for him. Demurrer overruled.

Further construction of the 17th article of the treaty, see Stroud v. Missouri R., Ft. S. & G. R. R. Co. [Case No. 13,547].